[Crim. No. 22304. Second Dist., Div. Two. June 26, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
PATRICIA ECKLEY, Defendant and Respondent.

COUNSEL

Joseph P. Busch, District Attorney, Harry Wood and Robert Ledermen, Deputy District Attorneys, for Plaintiff and Appellant.

Alvin B. Green and Stephen A. Holmes for Defendant and Respondent.

OPINION

COMPTON, J.—This is an appeal by the People pursuant to Penal Code section 1238, subdivision (a) (8) from a pretrial order of the superior court dismissing an indictment.

Defendant, together with Sanford Miller, M.D., Jack D. Wax, M.D., and Charla Janecek, was indicted by the Grand Jury of Los Angeles County for violations of Penal Code section 182, subdivision 4 and Penal Code section 182, subdivision 1 (conspiracy to cheat and defraud and to commit the felonies of grand theft, presentation of fraudulent claims to the State of California, and violations of Bus. & Prof. Code, § 2141.5). The indictment also charged the substantive crimes of violating Penal Code section 72 (presentation of fraudulent claims), grand theft and unlawful practice of medicine and psychotherapy in violation of Business and Professions Code section 2141.5 (practicing medicine without a license under circumstances creating risk of great bodily or mental harm). The various offenses were alleged to have been committed between March 1, 1969 and June 1, 1971.

Defendant entered pleas of not guilty, former conviction and once in jeopardy. In connection with the latter two pleas defendant presented the court with evidence that in June of 1971 a misdemeanor complaint was filed in the Municipal Court of the Los Angeles Judicial District, charging her with two counts of violation of section 2141, Business and Professions Code (practicing medicine without a license) and two counts of violation of section 2903, Business and Professions Code (practicing psychology without a license). All four violations were alleged to have occurred on March 30, 1971. Defendant pleaded nolo contendere to one count of violating Business and Professions Code section 2141 and the remaining counts were dismissed. Sentence was 60 days, suspended, probation for seven years on condition of payment of $250 fine.

The underlying facts upon which the misdemeanor prosecution was based are to be found in an investigative report which defendant filed with the court and in the transcript of the testimony given before the grand jury in connection with the present indictment.

Instead of proceeding to trial on the indictment and the defendant's pleas of not guilty, former conviction, and once in jeopardy, defendant made a "motion to dismiss the indictment under P.C. § 654." Penal Code section 654, of course, is not a statute which authorizes any "motion to dismiss." That statute simply provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The statute deals with two separate situations, i.e., multiple punishment

and multiple prosecution and each presents a different problem. (*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].)

Commencing with *Neal,* there has developed in this state a line of cases dealing with the issue of multiple punishment where the defendant has engaged in an indivisible course of criminal conduct resulting in a violation of various criminal statutes. The most recent pronouncement of the Supreme Court in this area is *People* v. *Beamon,* 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905]. One rule which emerges from these cases is that the multiple punishment provision of Penal Code section 654, as interpreted by those cases, does not bar prosecution and conviction for several offenses arising out of a course of conduct. (See *People* v. *Tideman,* 57 Cal.2d 574 [21 Cal.Rptr. 207, 370 P.2d 1007].)

In *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], however, the Supreme Court recognized the existence of a non-statutory pretrial motion to dismiss an action which appears to be barred by the multiple prosecution provisions of Penal Code section 654. That case established a rule which is separate and apart from those enunciated in the *Neal-Beamon* line of cases.

It is apparent from the nature of the offenses pleaded in the indictment and those pleaded in the misdemeanor complaint as well as from the underlying facts that will be discussed *infra* that we are not here dealing with the prohibition against double jeopardy. It is also apparent that had both the misdemeanor and felonies been joined in a single indictment the multiple punishment provisions of Penal Code section 654, if applicable at all, would have come into play only after trial and conviction. (See *Kellett* v. *Superior Court, supra,* at p. 825.)

Thus the single issue here presented is the applicability of the rule set out in *Kellett* concerning the bar to multiple prosecutions. The trial court in ruling on defendant's motion made it clear that it was of the opinion that *Kellett* was applicable to this case and specifically stated that to be the basis of granting the motion.

The assigned reasons for the court's application of the rule, however, do not support its ruling. The court stated: "I think they are based on similar acts, I think that the Center was being investigated, I think the investigator was out there; and his conversations with Dr. Wax, the sole purpose he was interviewing Dr. Wax was to get evidence on Eckley; that Wax was free to go at any time, and that it wasn't until later that they came to the conclusion that the defendant Wax was involved along with Miller. I am going to grant the motion under 654."

■ The rule in *Kellett* as set out on page 827 is that "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding . . . . Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence."

The underlying rationale of the rule and the objectives to be served by it are expressed in *Kellett* at page 825, as follows: "A defendant who blows up an airplane killing all on board or commits an act that injures many persons is properly subject to greater punishment than a defendant who kills or harms only a single person. It does not follow, however, that such a defendant should be liable to successive prosecutions. It would constitute wholly unreasonable harassment in such circumstances to permit trials seriatim until the prosecutor is satisfied with the punishment imposed."

The court then concluded on page 827: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively."

The *Kellett* court thus established basic policy objectives but at the same time recognized certain exceptions to the rule where "the risk that there may be waste and harassment. through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment." (P. 828.)

The net result of the quoted language is to require the courts to engage in a balancing process to be undertaken in light of the enunciated objectives of the rule. Thus each case is to be decided on its own facts and circumstances.

We now turn to the factual background in this case.

### THE MISDEMEANOR PROSECUTION

Defendant Eckley and one Charla Janecek (charged as a codefendant in the indictment) operated an establishment located in the Melrose Medical Center. This establishment was known under the names of The Los Angeles College of Humanities and the Los Angeles Development Center.

Neither Eckley nor Janecek were licensed as psychologists or physicians.

On March 30, 1971, an undercover operator for the Department of Professional and Vocational Standards visited the offices of defendant

Eckley and in a consultation with defendant Eckley related that she was having certain emotional and psychological problems. Defendant Eckley held herself out to be a psychologist and purported to treat those problems.

At the conclusion of the consultation the operator asked defendant Eckley if she would provide something to relieve "nervous tension, headaches and upper backaches." Defendant Eckley called to a pharmacy located in the same building and said, "This is Dr. Eckley, I'm sending Mrs. Crawley [the operator] down," and asked the pharmacist to provide Valium, a drug requiring a prescription, to the patient. When the undercover operator picked up the Valium, the prescription label on the bottle bore the name of Dr. Wax (charged as a codefendant in the indictment).

These facts provided the basis of the misdemeanor complaint to which defendant Eckley pleaded guilty in June of 1971.

The investigation of Eckley and Janecek continued and broadened and in July investigators for the state interviewed Dr. Wax as to why his name appeared on the prescription bottle. That interview developed information as to the relationship of the parties, information which later became relevant to the charges in the indictment.

## The Grand Jury Proceedings

Evidence presented to the Los Angeles Grand Jury preceding the return of indictment against defendants Wax, Miller, Eckley and Janecek established that defendants had conspired to submit fraudulent claims to and commit grand theft against the state's Medi-Cal program by filing treatment authorization requests and service reports which falsely indicated that treatment had been prescribed and effected by licensed physicians when in fact no such treatment had been given or if rendered at all was given by defendants Eckley and Janecek who were not possessed of a license to practice medicine, psychotherapy or psychology.

The numerous patients and expert medical witnesses who testified before the grand jury, painted a picture of widespread and active involvement of the defendants in thus defrauding the state Medi-Cal program.

## Application of the Kellett Rule

In *Kellett,* at pages 827 and 828, the court, after stating the rule set out, *supra,* observed, "We recognize that in many places felonies and misdemeanors are usually prosecuted by different public law offices and that there is a risk that those in charge of misdemeanor prosecutions may pro-

ceed without adequately assessing the seriousness of a defendant's conduct or considering whether a felony prosecution should be undertaken. When the responsibility for the prosecution for the higher offense lies with a different public law office there is also the risk that a well advised defendant may plead guilty to a misdemeanor to foreclose a subsequent felony prosecution the misdemeanor prosecutor may be unaware of or may choose to ignore. Cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. . . . Accordingly, in such cases section 654 does not bar a subsequent felony prosecution . . . ."

Here the misdemeanor charge, which was prosecuted by the City Attorney of Los Angeles, related to a single identifiable instance of practicing medicine without a license on a single individual, the undercover operator, while the indictment encompassed misconduct which differed as to the number of separate criminal acts, the types of offenses and the relationships of the parties involved. In brief, the indictment did not deal with the same act, course of conduct or quality of crimes as that of the misdemeanor prosecution.

While *Beamon, supra,* addressed the problem of multiple punishment the opinion contains language which is relevant here in analyzing whether defendant engaged in an indivisible course of conduct. At page 639, the court stated: "The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." Furthermore, the footnote on page 639 states: "It seems clear that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]"

Thus it would appear that in practicing medicine without a license with numerous and separate patients, the practice in connection with each patient would be a separate violation divisible in time from the others. It is also clear that defendant in the case at bar entertained multiple criminal objectives and that multiple criminal acts were involved. (See *Hankla* v. *Municipal Court,* 26 Cal.App.3d 342 [102 Cal.Rptr. 896].)

Furthermore, there is no showing here that the City Attorney of Los Angeles was aware of the massive fraud carried on by the four defendants when the misdemeanor charge was brought in June 1971. Indeed, the principal investigator testified he was unaware of Dr. Wax's relationship

to Eckley and Janecek when he questioned the use of defendant Wax's name on a prescription ordered by Eckley for the undercover agent.

Nor is there evidence that the district attorney, whose responsibility it was to prosecute the felony charges, was aware that the misdemeanor charge had been filed until after that charge had been disposed of.

We thus conclude that the purpose and spirit of the *Kellett* rule has no application to the case at bar. This is not the case of a prosecutor harassing a defendant with multiple prosecutions for closely related offenses because of dissatisfaction with the punishment previously meted out or because of previous failure to convict.

The risk that defendant Eckley may escape punishment for very serious felony crimes as the result of the premature filing of a relatively minor misdemeanor charge, far outweighs the risk of possible harassment or waste of public funds.

The order dismissing the indictment is reversed and the cause is remanded to the superior court with directions to proceed to trial.

Roth, P. J., and Fleming, J., concurred.