Filed 10/8/13  P. v. Cabrera CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B244389 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA089940) |
| SILVESTRE CABRERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Reversed.

Jennifer M. Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Silvestre Cabrera forced his minor daughter, M.M., to download pornographic videos on a computer and watch them with him.  He was initially

charged with the misdemeanor offense of annoying or molesting a child (Pen. Code, § 647.6, subd. (a), hereafter section 647.6),[1] to which he pled guilty. When the police later discovered that the computer hard drive contained files depicting minors engaged in sex acts, defendant was charged with felony possession of matter depicting a minor engaging in sexual conduct (§ 311.11, subd. (a), hereafter section 311.11). Defendant moved to dismiss the section 311.11 charge under section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*), contending that the charge arose from the same course of conduct as the section 647.6 conviction. The trial court denied the motion, concluding that the prosecution had acted with due diligence in discovering the existence of the child pornography on the computer. Later, in a bench trial, defendant was convicted of violating section 311.11. He was sentenced to three years in state prison and ordered to register as sex offender under section 290.

On appeal from the judgment of conviction, defendant contends that the trial court erred in denying his motion to dismiss. We agree. Substantial evidence does not support the trial court's finding of due diligence, and no exception to the bar of section 654 and *Kellett* applies. Therefore, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Felony Complaint and Preliminary Hearing*

On March 3, 2011, the Long Beach City Prosecutor charged defendant with violating section 647.6, subdivision (a). Defendant pled guilty to that charge on March 15, 2011.

In the instant felony case, defendant was initially charged in a complaint filed on September 2, 2011 with three counts: forcible rape (§ 261, subd. (a)(2)),

---

[1]     All undesignated section references are to the Penal Code.

lewd act on a child (§ 288, subd. (c)(1)), and possession of matter depicting a minor engaging in sexual conduct (§ 311.11, subd. (a)).[2] The charges were based largely on evidence provided by defendant's 16-year-old daughter, M.M.

At the preliminary hearing, M.M. testified that defendant had her type the name of a website on her computer (the computer was a Christmas gift from him to her). Defendant then "put on" a pornographic video and watched it while sitting next to her. The video showed male parents sexually abusing girls who looked to be 13 or 15. M.M. told defendant that she did not want to see it, but he said she had to see it. He touched her legs and unbuttoned her blouse, and said that his penis was hard. M.M. went to her bed, and defendant tried to lay down next to her. Defendant said that she looked like her mother. Defendant pushed her against the wall while she was on the bed. She tried to push defendant away. He told her that if she said something, no one would believe her.

Long Beach Detective Mark Steenhausen testified that Officers Sepulveda and Ruvalcaba recovered a computer from defendant's apartment on February 28, 2011 and observed in the search history that a Playboy website had been accessed. They seized the computer. Detective Steenhausen obtained consent from defendant to search the computer on March 1, 2011. Detective Matt Archer of

---

[2]      Section 311.11 provides in relevant part: "(a) Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony and shall be punished by imprisonment in the state prison, or a county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment."

3

Computer Crimes performed the search, and on April 7, 2011, gave Detective Steenhausen a report stating that he had found three child pornography files. The three files were downloaded on February 27, 2011.

On August 26, 2011, Detective Steenhausen interviewed defendant at his apartment about the contents of the computer. He said that he watched a pornographic video on the internet of a father having sex with his young daughter.

Although before the preliminary hearing M.M. had told Detective Steenhausen and the prosecutor that defendant had sexual intercourse with her, in her preliminary hearing testimony she denied that intercourse occurred. Detective Steenhausen testified to her earlier statements, and the magistrate held defendant to answer on all three counts.

*The Information and the Motion to Dismiss*

The Los Angeles County District Attorney filed an information charging defendant with the three counts on which he was held to answer: forcible rape (§ 261, subd. (a)(2)), lewd act on a child (§ 288, subd. (c)(1), and possession of matter depicting a minor engaging in sexual conduct (§ 311.11). Defendant pled not guilty. For reasons not fully explained in the record, the prosecutor moved to dismiss the rape and lewd act counts "due to recantation and issues with that." The trial court granted the motion and dismissed those counts, leaving only the section 311.11 count, possession of matter depicting a minor engaging in sexual conduct.

The defense moved to dismiss that charge under section 654 and *Kellett, supra,* 63 Cal.2d 822. The basis of defendant's motion to dismiss was that defendant had already been convicted of, and sentenced for, a misdemeanor

violation of section 647.6 based on the same course of conduct underlying the section 311.11 charge.[3]

Relying on undisputed facts, defendant's motion stated that on March 1, 2011, Detective Steenhausen received a voice mail from the Long Beach City Prosecutor informing him that defendant would be charged with one count of violating section 647.6, subdivision (a), and asking that he have the computer that had been seized by Officers Sepulveda and Ruvalcaba from defendant's apartment searched. Detective Steenhausen requested Detective Archer of Computer Crimes to analyze the computer. On March 3, 2011, the Long Beach City Prosecutor charged defendant with violating section 647.6, subdivision (a). Defendant pled guilty to that charge on March 15, 2011. On April 7, 2011, Detective Archer informed Detective Steenhausen that the computer contained three child pornography files. Defendant was charged by felony complaint with, inter alia, violating section 311.11 on September 2, 2011.

*The Hearing on the Motion to Dismiss*

The prosecutor did not file a written opposition to the motion, and produced no evidence. At the hearing on the motion, the prosecutor argued that the conduct underlying the section 647.6 charge related to defendant showing his daughter a pornographic video. However, the basis underlying the section 311.11 charge was revealed by subsequent investigation, namely, that there was child pornography on the computer. The prosecutor conceded that the child pornography on the computer was the same pornography defendant showed to his daughter. But the

---

[3] Section 647.6 provides in relevant part: "(a)(1) Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."

5

prosecutor argued that the police had used due diligence in searching the computer. The prosecutor stated, "[T]o be quite candid, analysis of a computer for this type of evidence can sometimes take months due to the availability of resources. So they really did everything they could every step of the way. They got it cued up as soon as possible. . . . The defendant just beat them to the punch in pleading to the misdemeanor." The trial court agreed that the police had acted with due diligence, finding that "a computer analysis takes a longer period of time," and denied the motion.

*The Bench Trial*

The case was tried to the court sitting without a jury. At trial, Long Beach Police Officer Javier Sepulveda testified that around 5:15 p.m. on February 28, 2011, he and his partner, Officer Sergio Ruvalcaba, responded to the apartment in Long Beach where defendant lived with his daughter M.M. After speaking with M.M., he seized a laptop computer, which was later transported to the station.

Officer Ruvalcaba testified that he told defendant that they were investigating possible child abuse. Defendant replied, "You're here because of the porno." After advising defendant of his *Miranda* rights, Officer Ruvalcaba asked defendant to tell him what the porno was about. Defendant said that he had his daughter look up specific web sites for him showing white women having sex so he could watch it on her computer. He had M.M. click through pictures for about 20 minutes, and later asked her to find a video of white women having sex. She did, and they watched about a 10 minute video. He told M.M. that he was sexually

6

aroused, and asked if she was. M.M. said she was not. Defendant went into the bathroom and masturbated.[4]

Defendant pointed out the computer that was used. Officer Ruvalcaba looked at the search history, noticed the display of "Playboy.com", and took the computer into evidence.

Detective Steenhausen testified that on March 1, 2011, the City Prosecutor told him to have the computer analyzed. He knew that the City Prosecutor would be filing charges. That same day, he interviewed defendant in custody and obtained his consent to search the computer. Detective Steenhausen then delivered the computer to Detective Matt Archer of Computer Crimes and asked him to search the computer for pornography.

On April 7, 2011, Detective Archer contacted him. Detective Steenhausen did not then know that defendant had already been convicted of the misdemeanor charge. Because other information came to light, he continued to investigate the case and he spoke to defendant again on August 26, 2011, at defendant's residence.

When he told defendant that a search of the computer had revealed pornography between men and children, defendant said the night before he was arrested, he had watched the video with M.M. showing a man having sex with a girl between 10 and 12 years of age. M.M. was 15. Defendant was 63.

Detective Matthew Archer testified that he was assigned to the Computer Crimes Detail. He made a copy of the computer hard drive, examined it with forensic software, and exported the video files. He compared the digital fingerprint, or "hash value," of each file to a database of child pornography files

---

[4] Defendant said that there was a second occasion when he watched pornography with M.M. He bought her school supplies and an IPod, showed her some condoms, and asked her to look up pornography for him again. M.M. refused. Defendant became angry and took away the IPod.

compiled by the FBI. There were two matches, as well as a third child pornography video that Detective Archer identified. All three files were accessed and downloaded on February 27, 2011, around 12:00 a.m. and in the minutes thereafter.

## DISCUSSION

Defendant contends that the trial court erred in denying his motion to dismiss the section 311.11 charge under section 654 and *Kellett, supra*, 63 Cal.2d 822. We agree.

"Section 654, subdivision (a) provides that when '[a]n act or omission . . . is punishable in different ways by different provisions of the law,' '[a]n acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.' This provision thus bars multiple prosecutions for the same act or omission where the defendant has already been tried and acquitted, or convicted and sentenced." (*People v. Davis* (2005) 36 Cal.4th 510, 556 (*Davis*).) Construing section 654 in *Kellett, supra*, the court held: "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra*, 63 Cal.2d at p. 827.)

In the instant case, it is clear that the section 647.6 violation, which was based on defendant's forcing M.M. to download and watch pornography on the computer with him, was part of the same course of conduct on which the section 311.11 violation was based: the child pornography defendant was charged with possessing was the same pornography he forced M.M. to download and watch.

8

Respondent contends that it is unclear whether the two crimes were committed at the same time and place. However, at the hearing on the motion, the prosecutor conceded that the child pornography on the computer was the same pornography defendant showed M.M.[5] Moreover, at the preliminary hearing, M.M. testified that one video she was forced to watch showed male parents sexually abusing girls who looked 13 or 15. Further, defendant was arrested on February 28, and he told Detective Steenhausen that the night before he was arrested, he had watched a video with M.M. showing a man having sex with a girl between 10 and 12 years of age. At trial, Detective Archer testified that the three child pornographic videos were accessed and downloaded around the same time -- on February 27, 2011, around 12:00 a.m. and in the minutes thereafter. Thus, the section 647.6 and section 311.11 crimes occurred at the same time and place.

Relying on *People v. Hurtado* (1977) 67 Cal.App.3d 633, respondent argues that even if the crimes occurred at the same time and place, the conduct underlying the 647.6 violation did not "play[] a significant part" within the meaning of *Kellett* in the commission of the section 311.11 violation. In *Hurtado,* the court held that section 654 did not bar separate prosecutions for driving under the influence and possession of heroin, even though the police discovered 20 balloons of heroin in the car when the defendant was stopped for driving under the influence. (*Id*. at p. 637.) The court explained: "[T]he evidentiary pictures which had to be painted to prove the drunk driving and narcotics offenses were sufficiently distinct so as to permit separate prosecutions of the two offenses. . . . Evidence in the two cases[] was for the most part mutually exclusive, the only common ground being the fact that defendant was in the moving automobile in possession of the heroin at the

---

[5] During the hearing, the prosecutor argued that defendant's showing pornography to M.M. was not a necessary element to the section 311.11 violation. The court asked, "But it's the same porn?" The prosecutor replied, "Yes, it is."

9

same time that he was under the influence of alcohol. Such a trivial overlap of the evidence . . . does not mandate the joinder of these cases. [Citation.]" (*Id*. at pp. 636-637.)

By contrast, in the present case, the overlap of evidence was hardly "trivial." The 647.6 misdemeanor and the section 311.11 felony were closely linked: as we have explained, the section 647.6 charge was based on defendant's having M.M. download and watch pornographic videos with him on the computer; the section 311.11 charge was based on the presence of those videos in the computer hard drive. Thus, the conduct on which the misdemeanor was based (forcing M.M. to download and watch the videos) necessarily provided significant evidence tending to prove the section 311.11 charge (the presence of those videos on the computer under defendant's control).

Respondent next relies on an exception to the *Kellett* rule, which applies "where the prosecutor ""'is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.'"" [Citations.] Thus, for example, section 654 does not preclude prosecuting a defendant for the murder of a victim who dies only after an earlier prosecution for attempted murder. [Citation.] Similarly, section 654 will not bar a later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime. [Citation.] But this exception applies only when the government 'acted with due diligence at the outset but was unable to discover the additional facts necessary to sustain the greater charge.' [Citation.] Whether the government exercised due diligence is a question of fact. [Citation.]" (*Davis, supra,* 36 Cal.4th at p. 558.) We review the trial court's finding for substantial evidence. (*Barriga v. Superior Court* (2012) 206 Cal.App.4th 739, 748 (*Barriga*).)

Here, at the hearing on the *Kellett* motion, the trial court concluded that, because "a computer analysis takes a longer period of time," the prosecution acted with due diligence in developing evidence of the section 311.11 charge. However, the prosecution presented no evidence of due diligence to support that finding. Rather, the prosecutor simply argued, without any evidentiary support, that "analysis of a computer for this type of evidence can sometimes take months due to the availability of resources. So they really did everything they could every step of the way." Argument is not evidence, and we cannot say that delay in computer analysis due to the lack of resources in the Long Beach Police Department was such a commonly known, undisputed fact such that no evidence of it was required. Nor does the record of the preliminary hearing or trial contain any such evidence. Thus there was no evidence on which to base a finding that the lack of resources in the Long Beach Police Department prevented an examination of the computer being completed before defendant pled guilty to the misdemeanor charge.

In this regard, the present case is analogous to *Barriga v. Superior Court, supra,* 206 Cal.App.4th 739. There, on November 28, the police stopped a car that had been carjacked by three Hispanic males earlier in the afternoon. When stopped, the car had five occupants (two females and three males), among whom was Barriga, a passenger. (*Id.* at p. 742.) Barriga refused an officer's order to stay in the car and he was taken into custody along with the two other males. On the floor of the car the police found a cell phone that belonged to Barriga, and under his seat found a bag containing methamphetamine. (*Id.* at p. 742-743.) Later that night, the victim of the carjacking identified the other two male occupants as having participated in the crime, but told the police that Barriga was not involved. (*Id.* at p. 743.)

Two days later, on November 30, the District Attorney's office filed a juvenile wardship petition against Barriga alleging five counts arising out of his

11

conduct on November 28, and four counts from an unrelated incident. It was not alleged that he had committed the November 28 carjacking. On December 16, Barriga entered a negotiated disposition, in which he admitted one count from November 28, resisting a peace officer, and another unrelated count, in exchange for dismissal of the remaining allegations. (*Barriga, supra*, 206 Cal.App.4th at p. 743.)

In late December, the police obtained a search warrant for Barriga's cell phone, and for the first time discovered text messages implicating him in the November 28 carjacking. The District Attorney then filed a criminal complaint charging Barriga with robbery, carjacking, and other crimes. At the preliminary hearing, the magistrate denied Barriga's motion under *Kellett* to dismiss the criminal charges, and held him to answer. The trial court later denied a renewed motion. The prosecution offered no evidence as to why a search warrant for Barriga's phone was not obtained until two weeks after he had entered the negotiated disposition in the juvenile case. (*Barriga, supra*, 206 Cal.App.4th at pp. 744-745.)

The Court of Appeal issued a writ of prohibition directing the lower court not to proceed further on the criminal case. The court noted that "There . . . is no dispute that, when they charged Barriga in the juvenile case, and when they entered into the plea agreement with him in that case, the People were unaware of the evidence they later uncovered—specifically, the text messages on Barriga's cell phone—implicating him in the robbery and the carjacking. The question here is whether the People *should have been* aware of that evidence, or, as stated in *Davis*, whether the People were unable to discover that evidence despite reasonable efforts and due diligence." (*Id*. at p. 747.)

The court found that no substantial evidence supported a finding of due diligence: "[T]he People do not draw our attention to *any* evidence, substantial or

12

otherwise, that explains why they could not have, with reasonable efforts, and in the exercise of due diligence, obtained a search warrant for Barriga's cell phone and uncovered the incriminating text messages *before* they charged him in the juvenile case and entered into a plea agreement with him in that case. They assert that they 'could not proceed on the carjacking and robbery charges [initially] because the victim . . . specifically stated that [Barriga] was not involved.' We do not disagree with that assertion, but it fails to address the critical point in this case. The question here is why they did not manage to discover the evidence that was in their possession before they proceeded with the juvenile case against Barriga. To that question, the People offer no answer. Instead, they merely assert, ipse dixit, that substantial evidence supports a finding of due diligence. [¶] In the absence of any explanation of why they waited to search Barriga's cell phone until *after* they had charged him in the juvenile case *and* entered into a plea agreement with him in that case, we cannot agree that an implied finding of due diligence by the trial court is supported by substantial evidence." (*Barriga, supra*, 206 Cal.App.4th at p. 748.)

Similarly, in the present case, respondent can point to no evidence that explains why the police could not have discovered the existence of the child pornography on the computer before defendant pled guilty to the section 647.6 misdemeanor. Thus, the trial court's finding of due diligence cannot be upheld on appeal.

Citing *Davis*, respondent argues that the policy behind the section 654 bar on successive prosecutions would not be served here. But *Davis* provides no support for the trial court's ruling. In *Davis*, the victim reported being kidnapped and robbed of his car by three men, but neither he nor any witness could identify the persons involved in the robbery and kidnapping. (*Davis, supra*, 36 Cal.4th at pp. 556-557.) Four days later, defendant was apprehended driving the victim's car.

13

Defendant was initially charged only with the misdemeanor of unlawful taking of the victim's vehicle (Veh. Code, § 10851, subd. (a)), to which he pled guilty. After serving his sentence for the misdemeanor, he admitted to a witness his involvement in the kidnapping and robbery. Based on his admission, he was charged with those offenses, and he was later convicted of them in the same trial in which he was convicted of two unrelated special-circumstance murder charges and sentenced to death. (*Id.* at pp. 517, 556-557, 558.)

With respect to the kidnapping and robbery charges, before trial the defendant moved under *Kellett* and section 654 to preclude prosecution based on the earlier misdemeanor conviction. The Supreme Court upheld the trial court's ruling denying the motion, concluding that substantial evidence supported the trial court's finding that even with reasonable diligence, the prosecution could not have proceeded on the kidnapping and robbery charges earlier, because there was no evidence identifying defendant as one of the perpetrators until defendant admitted participating in those crimes. (*Davis, supra*, 36 Cal.4th at p. 558.) The Supreme Court also noted that the policy reasons underlying section 654 – preventing harassment and avoiding waste through relitigation of issues – would not be served by barring prosecution of the robbery and kidnapping charges, because: (1) the defendant's interest in not being harassed by a second trial was minimal, given that he was already on trial for the unrelated murders; and (2) defendant's guilty plea to the misdemeanor of unlawful driving of a vehicle dispensed with the a need for a trial on that charge. (*Id.* at p. 559.) The court stated: "Balanced against these minimal interests was the public's weighty interest in prosecuting and punishing defendant for the serious crimes of robbing and kidnapping [the victim]." (*Ibid.*)

*Davis* is easily distinguishable. As we have noted, there is no evidence, substantial or otherwise, supporting the trial court's finding that the prosecution could not have discovered the pornographic videos on the computer earlier with

14

reasonable diligence. Moreover, unlike *Davis*, defendant's interest in not being harassed was more than minimal: the sole charge on which defendant was facing trial was the charge of possessing child pornography; he was not charged with other crimes on which he would have faced trial anyway. Also, although defendant's plea to the misdemeanor of annoying a child dispensed with the need for a trial on that crime, *Davis* does not suggest that such a circumstance is sufficient, in itself, to defeat the bar on successive prosecutions.

Furthermore, while we do not mean to downplay the seriousness of possessing child pornography, it is not apparent that the public's interest in prosecuting a violation of section 311.11 substantially outweighs defendant's interest in avoiding harassment when the prior 647.6 conviction arises from his conduct in having his daughter download and watch the pornography he is later charged with possessing. Moreover, the difference in permissible punishment between a violation of section 647.6 and section 311.11 is not particularly drastic. As a misdemeanor, section 647.6 carries a maximum punishment of one year in the county jail and a $5,000 fine. (§ 647.6, subd. (a)(1).) As a felony, section 311.11 is punishable alternatively by one year in the county jail and a $2,500 fine (a lesser fine than section 647.6), or by imprisonment for 16 months, two or three years. (§§ 311.11, subd. (a); 18, subd. (a).) Significantly, both offenses carry the consequence of having to register as a sex offender for life under section 290. (See § 290, subd. (c); see also *People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1482 [duty to advise of registration consequence before guilty plea is based in part on that fact that "the ignominy and the duration of the registration requirement make it a particularly harsh sanction"].) In short, while *Davis* involved offenses of greatly disparate seriousness (unlawful driving or taking of a vehicle on the one hand, and robbery and kidnapping on the other), the instant case does not.

15

Respondent further contends that *Kellett* does not apply to this case, because two prosecutorial agencies were involved: the Long Beach City Prosecutor filed the section 647.6 charge, while the District Attorney filed the section 311.11 charge. In *Kellett*, the court stated: "We recognize that in many places felonies and misdemeanors are usually prosecuted by different public law offices and that there is a risk that those in charge of misdemeanor prosecutions may proceed without adequately assessing the seriousness of a defendant's conduct or considering whether a felony prosecution should be undertaken. When the responsibility for the prosecution for the higher offense lies with a different public law office there is also the risk that a well advised defendant may plead guilty to a misdemeanor to foreclose a subsequent felony prosecution the misdemeanor prosecutor may be unaware of or may choose to ignore. Cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. In such situations the risk that there may be waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Accordingly, in such cases section 654 does not bar a subsequent felony prosecution except to the extent that such prosecution is barred by that section's preclusion of multiple punishment." (*Kellett, supra*, 63 Cal.2d at pp. 827–828.)

Application of this exception to the *Kellett* rule – that is, a determination whether the risk of waste and harassment outweighs the risk that a defendant guilty of a felony may escape proper punishment – is determined "on a case-by-case basis" (*People v. Britt* (2004) 32 Cal.4th 944, 955), based on a balancing of factors. Two decisions illustrate the point: *In re Dennis B.* (1976) 18 Cal.3d 687 (*Dennis B.*) and *People v. Eckley* (1973) 33 Cal.App.3d 91 (*Eckley*).

16

In *Dennis B., supra*, 18 Cal.3d 687, the defendant (a minor) inflicted fatal injuries on a motorcyclist while making an unsafe lane change. (*Id*. at p. 690.) In a traffic ticket trial, he was found guilty of an infraction for the unsafe lane change and sentenced to pay a $10 fine. (*Id*. at p. 695.) Thereafter, the District Attorney filed a juvenile wardship petition against him alleging that he committed vehicular manslaughter and the juvenile court sustained the petition. (*Ibid*.)

On appeal from the wardship finding, the Supreme Court rejected the contention that under *Kellett*, the infraction case barred prosecution of the wardship petition alleging vehicular manslaughter. In determining whether the prosecution should have known of the two offenses from the outset, the court looked to the following factors. First, the court noted the disparity in gravity between the two crimes (an infraction with a $10 fine as compared to vehicular manslaughter) strongly favored permitting the wardship proceeding to go forward. "Whatever anxiety a defendant charged consecutively with a minor traffic offense and a felony or serious misdemeanor is likely to experience will result solely from the latter charge, not from [harassment by] the multiplicity of prosecutions." (*Dennis B., supra*, 18 Cal.3d at p. 695.)

Second, the court the stated that "the state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings." (*Dennis B., supra*, 18 Cal.3d at p. 695.) Third, the court was not "insensitive to the equities of the state's position. There is an undeniable state interest in prosecuting serious misdemeanors and felonies. To permit defendant to be prosecuted only for a minor motor vehicle code infraction when his alleged crime was actually manslaughter 'would operate a gross unfairness to the State.' [Citation.] On balance, we believe the minimal potential for harassment and waste caused by defendant's multiple prosecution in

17

the case at bar is outweighed by the state's interests in preserving the summary nature of traffic proceedings and insuring that a defendant charged with a felony or serious misdemeanor does not evade appropriate disposition. [Citation.] Accordingly, juvenile proceedings arising from the unsafe lane change are not barred by defendant's traffic conviction." (*Id*. at p. 696.)

The rationale of *Dennis B.* does not apply to the instant case. Here, as we have explained, there is no gross disparity of seriousness between the section 647.6 and section 311.11 charges. Moreover, given the overlap in evidence -- both cases arose from the same embarrassing and depraved conduct of having defendant's daughter download on the computer and watch pornography – it cannot be said that whatever anxiety defendant might experience from multiple prosecutions would be caused solely by the latter felony and not by the earlier misdemeanor. Finally, the instant case does not involve a state interest comparable to that of maintaining the summary nature of traffic cases.

The second illustrative case, *Eckley, supra,* 33 Cal.App.3d 91, is similarly distinguishable. There, the defendant pled nolo contendere to a misdemeanor charge of practicing medicine without a license, filed by the City Attorney. Later investigation revealed that this incident was part of a much larger course of conduct involving Medi-Cal fraud. The grand jury returned a felony indictment charging, inter alia, grand theft, conspiracy to defraud and to commit grand theft, and practicing medicine without a license. In holding that under *Kellett* the misdemeanor conviction prosecuted by the City Attorney did not bar the prosecution of the grand jury indictment by the District Attorney, the court relied on the following factors: (1) the indictment "did not deal with the same act, course of conduct or quality of crimes as that of the misdemeanor prosecution," in that the misdemeanor was a single instance of practicing medicine without a license "while the indictment encompassed misconduct which differed as to the number of

18

separate criminal acts, the types of offenses and the relationships of the parties involved" (*id.* at p. 97); (2) each instance of the many in the indictment involving practicing medicine without a license was a separate violation divisible in time, and the defendant entertained multiple criminal objectives and committed multiple criminal acts (*ibid.*); and (3) because the City Attorney was unaware of the "massive fraud" and the District Attorney was unaware of the misdemeanor charge until after the plea, the case was not one in which the prosecutor "harass[ed] a defendant with multiple prosecutions for closely related offenses because of dissatisfaction with the punishment previously meted out or because of previous failure to convict" (*id.* pp. 97-98).  Under these circumstances, "[t]he risk that defendant . . . may escape punishment for very serious felony crimes as the result of the premature filing of a relatively minor misdemeanor charge, far outweighs the risk of possible harassment or waste of public funds." (*Id.* at p. 98.)

Unlike the instant case, *Eckley* was not one in which, as required by *Kellett*, "the same act or course of conduct play[ed] a significant part" in each prosecution. (*Kellett, supra,* 62 Cal.2d at p. 827.)  To the contrary, the misdemeanor in *Eckley* was merely a single instance of a much larger, overarching felony course of conduct involving many different criminal acts committed at many different times. Further, in *Eckley* the disparity of seriousness between the single misdemeanor on the one hand, and the felony fraud and grand theft on the other, was significantly wider than the disparity of seriousness between the felony and the misdemeanor in the present case.  Thus, *Eckley* does not support the trial court's ruling here.

In sum, no substantial evidence supports the trial court's finding that the prosecution acted with due diligence in not discovering the child pornography on the computer in police possession before defendant pled guilty to the section 647.6 violation.  Further, no other exception to the bar of section 654 and *Kellett* applies.

19

Therefore, the trial court erred in denying defendant's motion to dismiss the section 311.11 charge.

## DISPOSITION

The judgment is reversed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.