Filed 3/11/14  P. v. Bonnell CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM BONNELL,<br><br>      Defendant and Appellant. | B243931<br><br>(Los Angeles County<br>Super. Ct. No. LA070865) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael V. Jesic, Judge.  Affirmed.

Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Kimberley Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant William Bonnell appeals from judgment on his convictions for possession of a firearm by a felon and possession of a controlled substance. Before this court he complains the trial court violated his constitutional rights to due process, fair trial and to present a defense when it concluded that a witness, who presumably would have provided evidence helpful to the defense, was entitled to invoke her Fifth Amendment privilege against self-incrimination and thus refused to answer questions about her involvement in the crimes. Appellant argues the witness had no Fifth Amendment privilege because she had already resolved her part of the case, had no open cases and the time for appeal had expired. According to appellant, in view of Penal Code section 654's prohibition against multiple prosecutions based on the same act or course of conduct as interpreted in *Kellett v. Superior Court* (1966) 63 Cal.2d 822, 827, the witness could not be subject to future criminal liability based on her testimony about the crimes. In addition, appellant requests that this court conduct an independent review of the *in camera* hearing on his motion filed pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, in which he sought discovery of the police personnel records of the officers who arrested him.

As we shall explain, neither of the matters appellant raises warrants reversal of the judgment. With respect to the constitutional claim, based on the record, the *Kellett* rule does not apply to one of the charges in this case and its application to other charges is uncertain. Consequently, we conclude that because the witness might have been subject to criminal liability if she testified (and in so doing implicated herself in the charges filed against appellant), the court did not err in concluding that the witness was entitled to invoke her Fifth Amendment privilege. Concerning the *Pitchess* motion, our independent review of the record from the *in camera* hearing leads us to conclude that no police personnel records were improperly withheld in this case. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In March 2012, Mojgan Mostafavi's black Toyota Camry was stolen from in front of her Woodland Hills home. She reported the theft to the police. Mostafavi had not given anyone permission to take the car, and she did not know appellant.

On May 2, 2012, at about 3:00 a.m., Los Angeles Police Officer Oscar Orellana, and his partner, Officer Jesus Martinez, drove in a marked patrol car in an industrial area of Sun Valley. As they drove, they noticed a black Toyota Camry with "paper plates"[1] parked on Haddon Street. Although the car's engine and headlights were off, the officers noticed movement coming from inside in the backseat area of the car. As the officers drove toward the car, appellant "popped his head up from the rear seat of the vehicle," made eye contact with Officer Orellana, and then moved to the front of the vehicle into the driver's seat. A female, later identified as Virginia Meguerian, also raised her head from the back seat, "and immediately jumped over to the front passenger side of the vehicle," as appellant drove the vehicle away.

As appellant drove the car he did not turn on the headlights. Appellant and Meguerian did not secure their seatbelts. The officers initiated a traffic stop. Officer Martinez approached the driver's side of the vehicle and spoke to appellant. As Officer Orellana approached the passenger side of the Camry, he saw an empty ammunition magazine clip in the middle of the rear seat in plain view, next to a white shirt. The officers ordered appellant and Meguerian to get out of the vehicle.

Appellant exited from the driver's side while Meguerian got out of the car from the passenger's side. Both of them were clad only in their undergarments. The officers ordered them to move away from the car and detained them for further investigation.[2]

---

[1] It appeared that the license plate had been removed and replaced with a paper license plate printed with the word "Autoland." At trial, based on her review of a photograph of the car, Mostafavi identified the Toyota Camry as her vehicle that had been stolen from her home in March 2012.

[2] The officers recognized appellant and Meguerian from an incident two weeks earlier in which appellant and Meguerian were found parked in a Lexus automobile in "some degree of undress."

3

The officers proceeded to search the car. They saw the tip of a rifle protruding from inside of a duffel bag that sat on the floorboard directly behind the driver's seat. Inside the duffel bag they found a gun and ammunition magazine loaded with live rounds of .22 caliber bullets. The officers also recovered a "pink, clear plastic baggie containing a substance resembling [methamphetamine]" on the driver's side floor wedged between the driver's seat and the door compartment.

At some point, Meguerian asked the officers for her pants. Officer Orellana picked up a pair of pants, and asked if they belonged to her. Meguerian responded affirmatively. As the officer handed her the pants, "a clear plastic baggie with a crystalline substance resembling [methamphetamine] fell from her pants pocket." This bag was larger than the bag recovered the driver's side of the car.[3] The officers also recovered the car key from the ignition; the key operated the doors, windows and ignition of the Camry.

The officers placed appellant and Meguerian under arrest. The drugs, weapon, and weapons-related evidence were removed from the car; the officers did not use gloves when handling evidence, and thus no identifiable fingerprints were found on the items. Additional investigation revealed that the Camry appellant was driving had been reported stolen in March 2012. The gun the police found in the car was unregistered and appeared to be operable.

On May 4, 2012, appellant and Meguerian were charged in the same criminal complaint. Appellant was charged with three counts: (1) possession of a firearm by a felon, in violation of Penal Code section 29800, subdivision (a)(1) (count one); (2) unlawful driving or taking of a vehicle, in violation of Vehicle Code section 10851, subdivision (a) (count two); and (3) possession of a controlled substance, in violation of Health and Safety Code section 11377, subdivision (a) (count three). The information

---

[3] The crystalline material in the bag that fell from Meguerian's pants weighed 1.9 grams. The substance in the second bag found on the driver's side of the car weighed 0.13 grams. A microcrystalline test and an instrumental analysis conclusively determined that both bags contained methamphetamine.

also alleged the following as to all counts: that appellant had served a prior state prison sentence pursuant to Penal Code section 1170, subdivision (h)(3); that appellant had suffered a prior serious or violent felony conviction pursuant to Penal Code sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i) (Three Strikes Law); that appellant had suffered four prior felony convictions pursuant to section 1203, subdivision (e)(4) of the Penal Code; and that appellant had suffered three prior convictions pursuant to section 667.5, subdivision (b) of the Penal Code.

Meguerian was charged in count four with possession of a controlled substance in violation of section 11377, subdivision (a) of the Health and Safety Code. On May 30, 2012, Meguerian pled guilty to the charge against her and was sentenced and placed on probation.[4]

On May 30, 2012, an information was filed in the case charging only appellant with the same three counts (and prior conviction allegations) as alleged in the original felony complaint. Appellant pled not guilty to the charges.

In August 2012, prior to trial, the court conducted a hearing on appellant's motion to suppress evidence discovered in the car at the time of his arrest. At the hearing appellant sought to call Meguerian as a witness. Appellant believed that if she was called to testify, Meguerian might take responsibility for the criminal conduct that appellant had been charged with in the case. The court heard arguments from the parties and Meguerian's appointed counsel on the issues of whether she could face prosecution for incriminating herself in the crimes charged against appellant if she testified, and whether the ban on multiple prosecutions would apply to this case. The court concluded that Meguerian was entitled to assert her Fifth Amendment privilege if called to testify.[5]

---

[4]    In August 2012, Meguerian was found to have violated probation in the instant case and was sentenced to 180 days, and the option of attending drug treatment pursuant to Proposition 36.

[5]    Appellant also sought admission of a letter allegedly written by Meguerian to appellant in which she professed her love for appellant, and indicated that she had told her lawyer that "the gun in the car was [hers] . . ." and that she "wanted to take [her] time for it." The court excluded the letter on the grounds that it was hearsay and not clearly

5

Thereafter, when called to testify at the suppression hearing and in the subsequent trial, Meguerian invoked her Fifth Amendment right against self-incrimination and refused to answer any questions about her involvement in the case. Thereafter the court discontinued examination based on its ruling that she could properly assert the privilege against self-incrimination. Appellant did not testify.

The jury found appellant guilty of counts one and three. The jury was deadlocked on count two, and the trial court subsequently dismissed it. Appellant admitted three prior prison term allegations and one strike prior allegation. The court sentenced appellant to a total of seven years and four months in prison. Appellant timely appeals.

*DISCUSSION*

## I.    Constitutional Claim

Appellant contends the trial court erred in concluding that Meguerian could invoke the Fifth Amendment privilege. He points out that because Meguerian had already pled to the charges in the case, and the deadline for appeal had expired, she held no privilege against self-incrimination. Appellant contends that the court's error violated his rights to due process, compulsory process, a fair trial, and to present evidence in his defense in violation of the United States and California Constitutions. The Attorney General counters that appellant forfeited the right to challenge the court's finding by failing to object to Meguerian's invocation of the right at trial. In addition, because it was possible that Meguerian's testimony could have established guilt of a crime, the Attorney General further contends the trial court was required to permit her to exercise her Fifth Amendment privilege.

subject to a hearsay exception. The court also found that it was untrustworthy and unreliable. Before this court appellant refers to this letter to show the substance of the testimony Meguerian would have provided had she been compelled to testify in the case. Appellant does not, however, separately challenge the trial court's ruling excluding the letter.

6

A.    **Background**

At the suppression hearing appellant argued that Meguerian could not refuse to testify based on a Fifth Amendment privilege because she could not make any statements about the case that would subject her to criminal liability in view of the facts that her part of the case had already been resolved, she had no open cases and the time to file a notice of appeal in her case had expired.  Appellant argued that Penal Code section 654's ban on multiple prosecutions for the same act or course of conduct expressed in *Kellett* would apply to preclude the district attorney from prosecuting additional crimes against her based on the circumstances of the case.

The court appointed Meguerian counsel to advise her on the matter.  After the prosecutor indicated that it would not offer Meguerian immunity for any statements she might make during her testimony, Meguerian's counsel argued that the *Kellett* rule would not necessarily shield Meguerian from future prosecution.  Meguerian's counsel pointed out that Meguerain had never been charged with the other crimes alleged against appellant.  Her counsel argued that she could be charged with these crimes if new evidence emerged against her that met the elements of the charges, suggesting that at the time the original charges were filed, "[p]erhaps the District Attorney's office felt they couldn't prove she had knowledge of any of these items and therefore chose not to charge her.  Perhaps today she could make some sort of statement that would indicate she had knowledge . . . .  And that could change the whole picture."  After additional argument by appellant and Meguerian's counsel, the trial court agreed with Meguerian's counsel's position, finding that Meguerian had a Fifth Amendment privilege she could invoke: "I'm not saying that she can't testify.  I'm just saying that I find that there is potential for her incriminating herself if she decides to testify."

Thereafter, appellant's counsel stated that he was "submitting on the arguments" that he had made on the issue.  Appellant called Meguerian to testify at the suppression hearing, and Meguerian invoked her Fifth Amendment privilege against self-incrimination and refused to answer questions about the case.  When called by appellant

7

to testify during the trial, Meguerian again refused to answer questions based on the Fifth Amendment privilege. The court stated:

> "Based on her previous testimony, the 1538.5, where she invoked her 5th Amendment Right, based on the fact that she has now answered two questions by invoking her 5th Amendment Right, and the Court's previous ruling, and the fact she has stated that she intends to invoke on every question asked, I am going to end the direct examination, or I'm going to find that she is invoking her 5th Amendment Right and she will not be called as a witness in this case."

B.    **Legal Analysis**

"It is a bedrock principle of American (and California) law, embedded in various state and federal constitutional and statutory provisions, that witnesses may not be compelled to incriminate themselves." (*People v. Seijas* (2005) 36 Cal.4th 291, 304.) This privilege "must be accorded liberal construction in favor of the right it was intended to secure." (*Hoffman v. United States* (1951) 341 U.S. 479, 486.) A witness may assert the Fifth Amendment privilege who has "reasonable cause to apprehend danger from a direct answer." (*Ibid.;* accord *Ohio v. Reiner* (2001) 532 U.S. 17, 21.) A witness may refuse to answer questions calling for a potential link in a chain of evidence of guilt, as well as questions calling for clear admissions against penal interest. (*People v. Lucas* (1995) 12 Cal.4th 415, 454; *People v. Cudjo* (1993) 6 Cal.4th 585, 616.) However, the court should make a particularized inquiry as to whether or not a claim of privilege is well founded. Nonetheless, "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." (*Hoffman v. United States, supra,* 341 U.S. at pp. 486-487.) To deny an assertion of the privilege, "the judge must be '"perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency" to incriminate.'" (*Malloy v. Hogan* (1964) 378 U.S. 1, 12, quoting *Hoffman v. United States, supra,* 341

8

U.S. at p. 488.)  In addition, under California's Evidence Code the privilege applies broadly: when the person claiming the privilege demonstrates that the evidence at issue might tend to incriminate him or her, "the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person claiming the privilege."  (Evid. Code, § 404; see *People v. Cudjo, supra*, 6 Cal.4th at p. 617.)

Furthermore, although this court affords the trial court's resolution of factual disputes deference, when the relevant facts are undisputed, we review independently the trial court's ruling permitting the witness to assert the privilege against self-incrimination. (*People v. Seijas, supra,* 36 Cal.4th 291, 304.)

### 1.    Forfeiture

Prior to reaching the merits, we address the Attorney General's argument that appellant forfeited his constitutional complaint because he did not object to Meguerian's assertion of privilege during the trial.  In general, a defendant may not complain on appeal of an error during the trial unless in a timely fashion – and on the same ground – the defendant made an assignment of error.  (See *People v. Berryman* (1993) 6 Cal.4th 1048, 1072, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800.)  This, notwithstanding, a defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile.  (*People v. Hill* (1998) 17 Cal.4th 800, 821, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Based on the record we conclude that it would have been futile for appellant to re-assert an objection to Meguerian's invocation of privilege during the trial.  Appellant clearly articulated his objection to Meguerian's assertion of the Fifth Amendment at the suppression hearing.  At that time, on the record, the parties and the court engaged in extensive discussion and argument of the legal and factual issues surrounding the application of the privilege as well as the application of the *Kellett* rule.  The court's conclusion at the suppression hearing was unequivocal.  It does not appear that anything transpired after the hearing that would have altered the outcome of the court's original

9

assessment of the issue. Thus, an additional objection at trial would have served no purpose as it is not likely the court would have changed its ruling on the matter. Accordingly, we excuse appellant's failure to interpose an additional objection, and find that appellant's claim has been preserved for appellate review.

### 2. The *Kellett* Rule

Penal Code section 654 provides in relevant part: "An acquittal or conviction and sentence under any one [provision of law] bars a prosecution for the same act or omission under any other." (Pen. Code, § 654, subd. (a).) In *Kellett,* the seminal case interpreting the statutory bar against multiple prosecutions, the Supreme Court held that when "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance is permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett v. Superior Court, supra,* 63 Cal.2d at p. 827, fn. omitted.) The purpose of the *Kellett* rule is to prevent needless harassment and the waste of public funds through multiple trials based on the same underlying facts. (*Ibid.*)

Whether "same act or course of conduct plays a significant part" in offenses under *Kellett* is determined on a case-by-case basis. (*People v. Britt* (2004) 32 Cal.4th 944, 955.) Appellate courts have adopted two different tests – the "separate times and location test" and the "evidentiary test" to determine a "course of conduct" for purposes of multiple prosecution.

Under the "separate times and location test" the *Kellett* rule is not applicable where the offenses are committed at separate times and locations. For example, in *People v. Douglas* (1966) 246 Cal.App.2d 594, defendants were involved in a series of robberies. Subsequently, the police attempted to arrest them; a gunfight ensued and an officer was killed. Defendants were indicted for murder and only one was convicted. After the verdicts, the defendants were charged with 10 counts of robbery and other crimes, and ultimately they were convicted of the majority of the charges. They

10

appealed. (*Id.* at p. 596.) The court found *Kellett* did not apply to prevent the subsequent prosecutions because the offenses did not arise from the same act: "But in the present case defendants were prosecuted for unrelated offenses arising from separate physical acts performed at different times. A murder, a robbery, an assault, like every other action, normally has a beginning, a duration, and an end, and where, as here, none of these overlap, simultaneous prosecution is not required under any present theory of jurisprudence." (*Id.* at p. 599; accord *People v. Ward* (1973) 30 Cal.App.3d 130, 132-133, 136 [finding *Kellett* did not apply to kidnapping and rapes of separate victims where the first victim was driven from her residence to an isolated location, and the defendant later returned to the residence and kidnapped the second victim, driving her to a different isolated location]; *People v. Cuevas* (1996) 51 Cal.App.4th 620, 623-624 [rejecting application of *Kellett* rule to separate cocaine transactions undertaken on separate days, and noting *Kellett* "does not require, nor do the cases construing it, that offenses committed at different times and at different places must be prosecuted in a single proceeding"]; *People v. Martin* (1980) 111 Cal.App.3d 973, 977-978 [finding no error under *Kellett* where the defendant was prosecuted for possessing a sawed-off shotgun that had been taken in a burglary, and later prosecuted for the burglary].)

The "evidentiary test" was developed in *People v. Flint* (1975) 51 Cal.App.3d 333. In *Flint*, a prosecution for grand theft auto and felony joyriding was barred under *Kellett* after the defendant was prosecuted for driving under the influence of alcohol. The court found various cases on *Kellett* could be harmonized by considering the totality of the facts and whether separate proofs were required for the different offenses. (*Id.* at pp. 337-338.) "Neither the purpose of the rule – prevention of needless harassment and waste of public funds; nor the criterion for its applicability – whether the same act or course of conduct plays 'a significant part' with respect to each crime – suggests that its applicability in a particular case depends on abstract definitions of the elements of the respective crimes or on the precise moment when, as a matter of law, one crime was completed. What matters, rather, is the totality of the facts, examined in light of the legislative goals of [Penal Code] sections 654 and 954, as explained in *Kellett*." (*Id.* at p.

11

336, fn. omitted.)  The court found, "the same incident which furnished the evidence that defendant was driving in an intoxicated condition, also supplied proof that what he was driving was an automobile he had stolen."  (*Id.* at p. 338.)

The evidentiary test was further refined in *People v. Hurtado* (1977) 67 Cal.App.3d 633, 636: "More specifically, if the evidence needed to prove one offense necessarily supplies proof of the other, we concluded that the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds."  In *Hurtado*, defendant's plea to driving under the influence of alcohol did not bar prosecution for narcotics charges, based on balloons of heroin found when he was stopped after speeding and swerving erratically.  "Evidence in the two cases, was for the most part mutually exclusive, the only common ground being the fact that defendant was in the moving automobile in possession of the heroin at the same time that he was under the influence of alcohol.  Such a trivial overlap of the evidence, however, under *Kellett* and *Flint* does not mandate the joinder of these cases."  (*Id*. at p. 637.)

In addition, even if one or both of these tests are satisfied, courts also recognize an exception to the *Kellett* rule "where the prosecutor ""'is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.'"""  (*People v. Davis* (2005) 36 Cal.4th 510, 558.)  For this exception to apply, the prosecution must have exercised due diligence in searching for additional evidence.  (*Ibid.*)  In *Davis*, the victim reported being kidnapped and carjacked by three men, but neither he nor any witness could identify the persons involved in the crimes.  (*Id.* at pp. 556–557.)  Several days later, defendant was apprehended driving the victim's car.  Defendant was initially charged only with the misdemeanor of unlawful taking of the victim's vehicle, to which he pled guilty.  After serving his sentence for the misdemeanor, he admitted to a witness his involvement in the kidnapping and robbery.  Based on his admission, he was charged with those offenses, and he was later convicted of them.  (*Id.* at pp. 517, 556–557, 558.)  With respect to the kidnapping and robbery charges, before trial the defendant moved under *Kellett* and Penal Code section 654 to preclude

prosecution based on the earlier misdemeanor conviction. The Supreme Court upheld the trial court's ruling denying the motion, concluding that substantial evidence supported the trial court's finding that even with reasonable diligence, the prosecution could not have proceeded on the kidnapping and robbery charges earlier, because there was no evidence identifying defendant as one of the perpetrators until defendant admitted participating in those crimes. (*Id.* at p. 558.)

*Barriga v. Superior Court* (2012) 206 Cal.App.4th 739 presents additional analysis of the *Kellett* exception. In *Barriga* the police stopped a car that had been reported as carjacked. (*Id.* at p. 742.) The appellant, a minor, was a passenger in the car. The appellant's cell phone was found in the car when he was arrested. (*Id.* at pp. 742-743.) A juvenile wardship petition was filed against the appellant alleging five counts arising out of an encounter he had with police at the time of his arrest. The appellant was not initially implicated in the carjacking and he entered a negotiated disposition, in which he admitted one count of resisting a peace officer and another unrelated count, in exchange for dismissal of the remaining allegations. (*Id.* at p. 743.)

Several weeks later the police obtained a search warrant for the appellant's cell phone, and for the first time discovered text messages implicating him in the carjacking. The prosecution offered no explanation as to why a search warrant for the phone was not obtained until two weeks after he had entered the negotiated disposition in the juvenile case. The District Attorney filed a criminal complaint, charging the appellant with robbery and the carjacking. The court denied the appellant's motion under *Kellett* to dismiss the criminal charges. (*Barriga v. Superior Court, supra,* 206 Cal.App.4th at pp. 744-745.)

The Third District Court of Appeal issued a writ of prohibition directing the lower court not to proceed further on the criminal case. The court noted that "[t]here . . . is no dispute that, when they charged [defendant] in the juvenile case, and when they entered into the plea agreement with him in that case, the People were unaware of the evidence they later uncovered – specifically, the text messages on [his] cell phone – implicating him in the robbery and the carjacking. The question here is whether the People should

13

have been aware of that evidence, or, as stated in *Davis*, whether the People were unable to discover that evidence despite reasonable efforts and due diligence." (*Barriga v. Superior Court, supra,* 206 Cal.App.4th at p. 747.) The court found that no substantial evidence supported a finding of due diligence: "[T]he People do not draw our attention to any evidence, substantial or otherwise, that explains why they could not have, with reasonable efforts, and in the exercise of due diligence, obtained a search warrant for [defendant's] cell phone and uncovered the incriminating text messages before they charged him in the juvenile case and entered into a plea agreement with him in that case. They assert that they 'could not proceed on the carjacking and robbery charges [initially] because the victim . . . specifically stated that [the defendant] was not involved.' We do not disagree with that assertion, but it fails to address the critical point in this case. The question here is why they did not manage to discover the evidence that was in their possession before they proceeded with the juvenile case . . . . To that question, the People offer no answer. Instead, they merely assert, ipse dixit, that substantial evidence supports a finding of due diligence. [¶] In the absence of any explanation of why they waited to search [the] cell phone until after they had charged him in the juvenile case and entered into a plea agreement with him in that case, we cannot agree that an implied finding of due diligence by the trial court is supported by substantial evidence." (*Id.* at p. 748.)

Here, appellant argues the drug possession charge that Meguerian pled to and was convicted of was part of the same course of conduct as the crimes charged against him, and therefore the *Kellett* rule would apply here to prevent the prosecutor from filing additional charges against Meguerian for the car theft, weapon and drug possession. As a result, he contends Meguerian could not have incriminated herself if she testified at his trial and implicated herself in the other criminal acts alleged him against him. Accordingly, in appellant's view, Meguerian was not entitled to invoke the privilege against self-incrimination to refuse to testify. As we shall explain, appellant has not convinced us that the *Kellett* rule would necessarily apply.

14

First, under either *Kellett* test, it does not appear the alleged violation of Vehicle Code section 10851, subdivision (a)[6] – the unauthorized taking or driving of a vehicle – charged against appellant, was the "same act or course of conduct" as the drug possession charged against Meguerian. The car theft occurred months before appellant and Meguerian were arrested on May 2, 2012, and thus under the "separate locations, separate times test" *Kellett* would not apply to shield Meguerain from prosecution for that Vehicle Code violation if she implicated herself in that crime. Similarly, the weapons possession (Pen. Code § 29800, subd. (a)(1)[7]) and drug possession (Health & Saf. Code, § 11377, subd. (a)) that were charged against appellant were also distinct crimes from the drug possession charged against Meguerian.[8] There was no indication that the drug crimes and the weapon possession offense were committed at the same time. The only apparent connection between all of the crimes was that they were discovered at the same time in the same location.

---

[6]     Vehicle Code section 10851, subdivision (a) provides: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a county jail for not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment."

[7]     Penal Code section 29800, subdivision (a)(1) provides: "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

[8]     Based on the record before us, it is unclear whether Meguerian could have been charged with the same weapons possession offense (Pen. Code, § 29800, subd. (a)) alleged against appellant even had she confessed that the weapon belonged to her. There is no evidence that Meguerian had been previously convicted of a felony or qualifying offenses or otherwise satisfied the elements of Penal Code section 29800.

15

Arguably Meguerian would fare no better under the "evidentiary test" because the drug possession offense, the gun possession offense and the Vehicle Code violation were legally distinct from each other and from Meguerian's drug charge. The evidence needed to prove the offenses did not necessarily supply proof of the other crimes. The common thread among all of the offenses at issue was that the weapon and the drugs were found in the stolen automobile when the officers initiated the traffic stop. Of course, from a practical standpoint, it might make sense to try these offenses together because they were discovered at the same time and certain witnesses, such as the arresting officers, could provide evidence as to all of the offenses. However this overlap of evidence might also be fairly characterized as trivial. "[T]he evidentiary test . . . requires more than a trivial overlap of the evidence. Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*." (*People v. Valli* (2010) 187 Cal.App.4th 786, 799.) Thus, it does not appear that the *Kellett* rule would necessarily have applied to ban the prosecutor from filing additional charges against Meguerian.

Second, even were we to conclude that the *Kellett* tests were satisfied because all of the crimes were part of the same course of conduct as the drug crime charged against Meguerian, we are also convinced that the exception to *Kellett* applies.

It appears that at the time of the arrests, the prosecutor did not have sufficient evidence to sustain charges against Meguerian for the other offenses – possession of the second bag of drugs, the weapons charge and the car theft. All of the evidence the prosecution had prior to trial pointed to appellant as the person in control of those items: he was driving the stolen car; the gun and ammunition were on the floor behind his seat; and the smaller bag of drugs was located on the driver's side floorboard between the seat and the driver's door. There was no evidence suggesting that Meguerian had knowledge or involvement in these offenses at the time. There was nothing to link Meguerian to these crimes other than her status as a passenger in the car, nor was there evidence of any joint control or possession of the car, weapon or smaller bag of drugs.

16

Testimony from Meguerian in which she took responsibility for the car theft, weapon or smaller bag of drugs would have supplied the evidence connecting her to the crimes to support additional charges against her. Such a statement would have constituted new evidence that did not exist at the time of the arrests. Emergence of the new evidence is similar to the admission of the defendant in *Davis*. It is also distinct from the situation in *Barriga*, where the prosecution failed to act with diligence to realize the materiality of the evidence – the contents of the cell phone texts – that it discovered and had access to at the time of the defendant's arrest. Here there was no such evidence that the authorities failed to find or recognize at the time of Meguerian's arrest. In our view, the prosecution could not have proceeded on the Vehicle Code violation, weapons charge and/or the additional drug possession charges against Meguerian earlier because there was insufficient evidence identifying Meguerian as the perpetrator of those offenses, until (and unless) Meguerian testified that she participated in those crimes.

Therefore, the *Kellett* rule would not likely have applied to prohibit the prosecutor from charging Meguerian for the vehicle theft, the weapons possession, or possession of the smaller bag of drugs had she implicated herself in those offenses during testimony when called as a witness in appellant's trial. As a result, the trial court properly concluded that Meguerian could invoke her Fifth Amendment privilege against self-incrimination to refuse to answer questions about the case.

## II.    *Pitchess* Review

Appellant requests, and the Attorney General concurs, that this court should conduct an independent review of the record presented to the trial court *in camera* to determine whether it was an abuse of discretion to deny appellant access to the officer personnel records. (*Pitchess v. Superior Court, supra,* 11 Cal.3d 531; *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286 [trial court's decision on discoverability of material in officer's files reviewed for abuse of discretion].)

The record of the *in camera* hearing has been made part of the appellate record, but sealed, and appellate counsel for defendant has not been permitted to view it. We have independently examined reporter's transcript of the trial court's *in camera* hearing and review. The record is adequate for meaningful appellate review. We conclude that the trial court followed the required procedure for *in camera* review under *Pitchess* and that the trial court did not abuse its discretion in ruling on the *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229; *People v. Myers* (2007) 148 Cal.App.4th 546, 553.)

### *DISPOSITION*

The judgment is affirmed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                  **SEGAL, J.** [*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.