[No. C068063. Third Dist. May 30, 2012.]

OCTAVIO BARRIGA, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

740

### COUNSEL

Harry E. Hudson, Jr., for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and A. Kay Lauterbach, Deputy Attorneys General, for Real Party in Interest.

### OPINION

**ROBIE, J.**—In late November 2010, the police stopped a Ford Mustang that had been carjacked; petitioner Octavio Barriga was a passenger in the car. After the car's owner told police Barriga was not one of his assailants, the People charged Barriga in a juvenile wardship proceeding with unlawfully taking or driving a vehicle and resisting a peace officer (among other charges), but did not charge him with carjacking.

In mid-December 2010, Barriga entered into a plea agreement in the juvenile case pursuant to which he admitted the charge of resisting a peace officer and the other charges related to that incident were dismissed.

In late December, the police obtained a warrant to search Barriga's cell phone, which they had seized from the stolen Mustang, and in the execution of that warrant discovered a series of text messages that incriminated Barriga in the carjacking. As a result, the People charged Barriga with the carjacking in criminal court. Barriga moved to dismiss the criminal case pursuant to the bar on multiple prosecutions in Penal Code section 654 (among other grounds), but the trial court denied that motion.

On Barriga's petition for a writ of prohibition, we conclude the trial court erred in denying his motion to dismiss the criminal case because there was no substantial evidence to support a finding that the People made reasonable efforts or acted with due diligence to discover the text messages on Barriga's cell phone. Absent an evidentiary showing of due diligence by the People, Barriga was entitled to protection against a second prosecution arising out of the taking of the Mustang. Accordingly, we will grant Barriga's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 5:30 p.m. on November 28, 2010, Stockton police received a report of a carjacking at Laughlin Park. Upon learning the victim, Salvador Lopez, was being transported to the hospital, a police officer went there to speak with him. Lopez reported to the officer that three Hispanic males, around 17 or 18 years old, tried to tie him to a pole; attacked him when he resisted (one using a metal pipe); robbed him of $4, his cell phone, and his car key; and then drove off in his red Ford Mustang.

Around 9:30 p.m. that same day, Stockton Police Officer Thomas Heslin, who was aware of the reported carjacking, found himself driving behind a red Ford Mustang. Officer Heslin checked the license plate number and discovered the registration was expired, so he pulled the car over. There were five individuals in the car, three male and two female. The driver, Jorge Reynaga, admitted he was on probation. Officer Heslin had Reynaga get out of the Mustang and into the back of the patrol car. When the right front passenger, later identified as Barriga, started to get out of the Mustang, Officer Heslin told him to get back in the car. Barriga refused, so Officer Heslin placed him in the patrol car with Reynaga. Subsequently, the third male in the car, Alfredo P., also disobeyed Officer Heslin's instructions to remain in the Mustang, and Officer Heslin placed him in the patrol car as well.

Eventually, other officers arrived to assist Officer Heslin. At some point, the Mustang was identified as Lopez's. Additionally, it was determined that the license plates on the Mustang belonged to another vehicle.

Under the seat where Barriga had been, the police found a bag with 3.84 grams of methamphetamine. There was also a black Samsung cell phone on

the floor of the car. Officer Heslin saw that the wallpaper (i.e., background photograph) on the cell phone was a picture of Barriga and three other males making gang signs with their hands and wearing red clothing. Barriga later identified the phone as his.

In a statement to Officer Heslin, Reynaga claimed he did not know the car was stolen. He said he had been over by the park when Barriga drove up in the Mustang with another male and two females, all of whom were very drunk. He decided to drive them around and had been driving the Mustang for only about 10 minutes when the police stopped him.

Later, at a field show-up at the hospital, Lopez identified Reynaga and Alfredo P. as two of the perpetrators of the carjacking. Lopez was not able to identify Barriga as one of the perpetrators, however. In fact, according to the police report, Lopez was "certain" Barriga was *not* involved.

On November 29, a police officer was dispatched to an address on Barbados Court on a report of stolen license plates. At that time, the officer determined that the plates stolen from this address were the plates found on the stolen Mustang. The officer also determined that Barriga lived nearby on the same street.

Two days after the incident, on November 30, 2010, the Juvenile Division of the San Joaquin County District Attorney's Office filed a nine-count juvenile wardship petition against Barriga (case No. 62520), which included five counts pertaining to his conduct on November 28,[1] as follows: (1) unlawfully taking or driving Lopez's Mustang; (2) receiving stolen property (the Mustang); (3) resisting a peace officer; (4) selling or transporting methamphetamine; and (5) possessing methamphetamine. Each count but the third included a criminal street gang (street terrorism) enhancement allegation.

Barriga was arraigned on the petition on December 1. On December 16, he accepted a plea agreement, admitting the allegation of resisting a peace officer and one of the other four unrelated counts in exchange for dismissal of the remaining seven counts of the petition. The dispositional hearing was set for January 3, 2011.

Meanwhile, in late December, Stockton Police Detective Kenneth Krein, who was investigating the carjacking, obtained a warrant to search Barriga's cell phone, which had been booked into evidence. A search of the phone revealed a number of text messages from November 28, including the following exchange:

---

[1] The other four counts in the petition pertained to unrelated conduct on an earlier date.

From the phone at 5:36 p.m.: "31 BT a beat da hit a pai$a n kame up on hiz car."

To the phone at 5:41 p.m.: "LOL fuk your mean."

From the phone at 5:45 p.m.: "Fuk it bt u tryin 2 kik it?"

To the phone at 5:47 p.m.: "Rite Now."

To the phone at 5:50 p.m.: "Wat about tomorow?"

From the phone at 5:55 p.m.: "If I $till got it."

To the phone at 5:57 p.m.: "Orite what kind of car is it."

From the phone at 5:57 p.m.: "Mustang."

To the phone at 5:58 p.m.: "Oh what color."

In light of this new information, on January 4 the San Joaquin County District Attorney's Office filed a criminal complaint against Barriga under subdivision (d) of section 707 of the Welfare and Institutions Code,[2] charging him with robbery, carjacking, false imprisonment by violence, transporting or selling methamphetamine, and street terrorism. Later that month, the People filed an amended complaint dropping the drug charge and the street terrorism charge. All three of the remaining charges included criminal street gang enhancement allegations.

On February 24, the disposition hearing was finally held in the juvenile case. Barriga was committed to the county camp for a year, in addition to 88 days already served.

With the preliminary hearing in the criminal case set for March 10, Barriga filed a motion to dismiss based on breach of contract (the plea agreement), double jeopardy, and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], a case interpreting the bar on multiple prosecutions in Penal Code section 654. The People opposed the motion, arguing that the evidence of Barriga's involvement in the carjacking and robbery was not revealed until December 28, when his cell phone was searched. In opposing

---

[2] "Welfare and Institutions Code section 707, subdivision (d) . . . confers upon prosecutors the discretion to bring specified charges against certain minors directly in criminal court, without a prior adjudication by the juvenile court that the minor is unfit for a disposition under the juvenile court law." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 545 [117 Cal.Rptr.2d 168, 41 P.3d 3].)

the motion, the People offered no explanation of why a search warrant for Barriga's cell phone was not obtained until two weeks *after* he had entered into a plea agreement in the juvenile case.

At the preliminary hearing, in considering the motion to dismiss, the court (Judge Terrence R. Van Oss) concluded that "the real issue here is whether or not the People are bound by th[e] plea bargain" in the juvenile case. Thus, at the end of the hearing the court told the People they needed "to go back to the juvenile court and ask to have the plea bargain set aside" if they wanted to proceed with the criminal case. The court then denied the motion to dismiss without prejudice on the ground it was "the wrong motion." The court held Barriga to answer on the robbery and carjacking charges but not on the false imprisonment charge.

On April 4, the People filed a motion in the juvenile case asking the court to withdraw its approval of the plea agreement because the agreement was "premised upon incomplete information." That motion was later denied. While the People's motion was pending, however, Barriga renewed his motion to dismiss the criminal case. This time, in addition to renewing his argument under *Kellett*, Barriga also argued the People were barred by estoppel and due process from proceeding with the criminal case in light of the plea agreement in the juvenile case. Again, the People opposed the motion. And again, they offered no explanation of why a search warrant for Barriga's cell phone was not obtained until two weeks after he had entered into a plea agreement in the juvenile case.

The court (Judge William D. Johnson) heard Barriga's renewed motion to dismiss on April 26. Noting that the matter was "a tough one to decide," the court observed that "the big thing going against" Barriga was that Lopez told the police he was "certain" Barriga was not involved in the carjacking. Thereafter, the court denied the motion to dismiss the criminal case.

On May 5, 2011, Barriga commenced this proceeding by filing a petition for a writ of prohibition in this court. On May 12, 2011, this court stayed the criminal case. On June 9, 2011, following the filing of the People's preliminary opposition and Barriga's reply, this court issued an alternative writ.

## DISCUSSION

Barriga contends he was entitled to dismissal of the criminal case against him based on Penal Code section 654 and the California Supreme Court's decision interpreting that statute in *Kellett*. For the following reasons, we agree.

Subdivision (a) of Penal Code section 654 provides as follows: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

■ In *Neal v. State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the California Supreme Court explained that "[s]ection 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (*Id.* at p. 21.) Thereafter, in *Kellett*, the court concluded as follows:

"If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted.

"When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett v. Superior Court, supra*, 63 Cal.2d at p. 827.)

■ In *People v. Davis* (2005) 36 Cal.4th 510 [31 Cal.Rptr.3d 96, 115 P.3d 417], the Supreme Court discussed "an exception to the multiple-prosecution bar [that has been recognized] where the prosecutor ' " 'is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.' " ' [Citations.] Thus, for example, section 654 does not preclude prosecuting a defendant for the murder of a victim who dies only after an earlier prosecution for attempted murder. [Citation.] Similarly, section 654 will not bar a later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime. [Citation.] But this exception applies only when the government 'acted with due diligence at

the outset but was unable to discover the additional facts necessary to sustain the greater charge.' [Citation.] Whether the government exercised due diligence is a question of fact." (*Davis*, at p. 558.)

In *Davis*, one Kingsmill " 'reported being kidnapped and robbed of his vehicle.' " (*People v. Davis, supra*, 36 Cal.4th at p. 556.) When the defendant was apprehended driving the car several days later, "Kingsmill was unable to identify any of his assailants . . . ." (*Id.* at pp. 556–557.) Accordingly, the defendant was not prosecuted for kidnapping and robbery but only for unlawfully driving the car. (*Ibid.*) The defendant pled guilty and served 60 days in jail. (*Id.* at p. 556.) After he served his sentence, however, he admitted to another man "how he had come into possession of [Kingsmill's] car." (*Id.* at p. 558.) When he was thereafter prosecuted for robbery and kidnapping for robbery, he argued that the prosecution "violated the prohibition on multiple prosecution under [Penal Code] section 654 and *Kellett*." (*Davis*, at p. 556.) The trial court disagreed, finding "the People could not have prosecuted defendant earlier for the robbery and kidnapping . . . ." (*Id.* at pp. 556–557.)

On review, the California Supreme Court determined that "[s]ubstantial evidence support[ed] [the trial court's] conclusion" "that, notwithstanding reasonable efforts, the prosecution could not have proceeded on the kidnapping and robbery charges earlier because neither victim Kingsmill nor anyone else could identify defendant." (*People v. Davis, supra*, 36 Cal.4th at p. 558.) Thus, the trial court was correct in concluding that Penal Code "section 654 did not bar the later prosecution." (*Davis*, at p. 558.)

With the foregoing principles in mind, we turn back to the case before us. There is no dispute that—at least for purposes of the bar on multiple prosecutions in Penal Code section 654—Barriga's alleged participation in the robbery and carjacking and his later conduct in resisting the police when Officer Heslin stopped the stolen car were part of the same "course of conduct." There also is no dispute that, when they charged Barriga in the juvenile case, and when they entered into the plea agreement with him in that case, the People were unaware of the evidence they later uncovered—specifically, the text messages on Barriga's cell phone—implicating him in the robbery and the carjacking. The question here is whether the People *should have been* aware of that evidence, or, as stated in *Davis*, whether the People were unable to discover that evidence despite reasonable efforts and due diligence.

In the context of a similar due diligence exception that has been recognized to the bar against multiple prosecutions under the double jeopardy clause of the United States Constitution, it has been said that "[w]hatever its

legitimate application, the burden of proving the due diligence exception falls certainly upon the government." (*U.S. v. Aguilar* (3d Cir. 1988) 849 F.2d 92, 100.) In the same context, it has been said that "[d]ue diligence is ' "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." ' " (*Daniel v. State* (2008) 2008 WY 87 [189 P.3d 859, 864].)

As we have noted already, whether the government exercised due diligence is a question of fact. (*People v. Davis, supra*, 36 Cal.4th at p. 558.) We review such questions for substantial evidence. (See *ibid.* [concluding that a finding that the prosecution could not have proceeded on greater charges notwithstanding reasonable efforts was supported by substantial evidence].)

Here, the People do not draw our attention to *any* evidence, substantial or otherwise, that explains why they could not have, with reasonable efforts, and in the exercise of due diligence, obtained a search warrant for Barriga's cell phone and uncovered the incriminating text messages *before* they charged him in the juvenile case and entered into a plea agreement with him in that case. They assert that they "could not proceed on the carjacking and robbery charges [initially] because the victim . . . specifically stated that [Barriga] was not involved." We do not disagree with that assertion, but it fails to address the critical point in this case. The question here is why they did not manage to discover the evidence that was in their possession before they proceeded with the juvenile case against Barriga. To that question, the People offer no answer. Instead, they merely assert, ipse dixit, that substantial evidence supports a finding of due diligence.

■ In the absence of any explanation of why they waited to search Barriga's cell phone until *after* they had charged him in the juvenile case *and* entered into a plea agreement with him in that case, we cannot agree that an implied finding of due diligence by the trial court is supported by substantial evidence.

The People argue that notwithstanding the issue of their due diligence, the bar on multiple prosecutions does not apply here because of another exception recognized in *Kellett*. Specifically, they assert that "[t]he *Kellett* rule does not apply where: (1) there are different prosecutors and the first fails to press the more serious charge; (2) the defendant quickly pleads guilty to the less serious charge; [and] (3) the prosecutor is justifiably ignorant of the felony." We find this argument to be based on a misreading of *Kellett*. What the court actually wrote in *Kellett* was this:

"We recognize that in many places felonies and misdemeanors are usually prosecuted by different public law offices and that there is a risk that those in charge of misdemeanor prosecutions may proceed without adequately assessing the seriousness of a defendant's conduct or considering whether a felony prosecution should be undertaken. When the responsibility for the prosecution for the higher offense lies with a different public law office there is also the risk that a well advised defendant may plead guilty to a misdemeanor to foreclose a subsequent felony prosecution the misdemeanor prosecutor may be unaware of or may choose to ignore. Cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. In such situations the risk that there may be waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Accordingly, in such cases [Penal Code] section 654 does not bar a subsequent felony prosecution except to the extent that such prosecution is barred by that section's preclusion of multiple punishment." (*Kellett v. Superior Court, supra*, 63 Cal.2d at pp. 827–828.)

This aspect of *Kellett* does not apply here for at least two reasons. First, the juvenile and criminal cases here were not prosecuted by "different public law office[s]." It is true, as the People note, that the two cases were prosecuted by different *deputy district attorneys*, but *both* prosecutors worked for the same office—the San Joaquin County District Attorney's Office. It would be an unjustified distortion of *Kellett* for us to conclude that two assistant prosecutors representing the very same district attorney are to be treated as though they work for different public law offices.

Second, in light of our conclusion that there is no substantial evidence to support a finding that the government acted with due diligence in investigating the potential charges against Barriga, we cannot conclude .that the prosecutor in the juvenile case was "reasonably unaware" of the charges of robbery and carjacking that could be made out against Barriga based on the text messages found on his cell phone. In the absence of evidence of reasonable efforts and due diligence, we must impute to the People constructive knowledge of the evidence they possessed from the moment they seized Barriga's cell phone. At the very least, in the absence of any evidence to the contrary, we are obliged to conclude that they should have known of that evidence before they charged Barriga in juvenile court and entered into a plea agreement with him in that case.

For the foregoing reasons, we conclude the trial court erred in denying Barriga's motion to dismiss the criminal case against him. Accordingly, we will direct the issuance of an appropriate writ of prohibition.

## DISPOSITION

The petition is granted. Let a peremptory writ of prohibition issue directing the respondent court to refrain from any further proceedings against petitioner Octavio Barriga in San Joaquin Superior Court case No. SF116624A. Barriga shall recover his costs in this proceeding. (Cal. Rules of Court, rule 8.493(a).)

Having served its purpose, the alternative writ is discharged.

Blease, Acting P. J., and Hull, J., concurred.

On June 7, 2012, the opinion was modified to read as printed above.