Filed 4/14/21  O'Conner v. Super. Ct. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GRAHAM O'CONNER, | C091557 |
| Petitioner, | (Super. Ct. No. 18FE001421) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE | |
| Real Party in Interest. | |

On or about December 17, 2017, a burglary occurred at the home of A.L. wherein multiple items were taken, including A.L.'s identification information.  On January 3, 2018, following a search of Graham O'Conner and his tent, A.L.'s identification information was recovered, along with burglary tools.  Thereafter, on January 5, 2018, the People charged O'Conner with multiple crimes arising from this search, including

1

receiving/concealing stolen property (Pen. Code, § 496, subd. (a)),[1] identity theft (§ 530.5, subd. (c)(2)), and possession of burglary tools (§ 466). O'Conner was not charged with burglary. This case was resolved via a plea bargain on January 10, 2018.

On January 11, 2018, the next day, authorities requested and received a fingerprint match proving O'Conner had been inside A.L.'s apartment. As a result, the People charged O'Conner with the December 17, 2017, burglary of A.L.'s apartment. O'Conner unsuccessfully moved to dismiss this later action as barred under section 654.

We conclude that the trial court erred in denying O'Conner's motion to dismiss the later burglary case because there is no substantial evidence in the record supporting that the People made reasonable efforts or acted with due diligence to discover that O'Conner's fingerprint matched a print left by the burglar prior to the settlement of the first case against him. Absent an evidentiary showing of due diligence by the People, O'Conner was entitled to dismissal of that latter action. Accordingly, we will grant O'Conner's petition.

## I. BACKGROUND

A.    *The Investigation and Successive Complaints*

On or about December 17, 2017, a burglary occurred at A.L.'s apartment wherein multiple items were taken from her ransacked bedroom, including a cell phone, laptop, identification information (including her social security card, passport, and nursing student ID), banking documents, and jewelry. A dirty red cereal bowl not used by the victim was located in the apartment, and investigators recovered two latent fingerprints from that bowl. A crowbar apparently belonging to the burglar was left on the patio behind a wooden fence gate.

---

[1] Undesignated statutory references are to the Penal Code.

On January 3, 2018, park rangers were investigating reports of illegal camping. One park ranger contacted O'Conner at his tent, which he claimed to share with another individual. The ranger conducted a probation search of the tent and recovered, among other things, a sawed-off shotgun and jewelry. Also recovered were identity cards and property from several burglary victims, including a bag with A.L.'s passport, school ID, and other paperwork in A.L.'s name. Lock picking tools were discovered on O'Conner himself. O'Conner denied that he steals things and claimed to have found the paperwork and ID's in the garbage. He also admitted owning the baton found in camp, but denied that the burglary tools or shotgun were his. A key fob for a Jeep was recovered from inside a backpack that O'Conner admitted was his. Also recovered from the backpack were bolt cutters and a crowbar.

On January 5, 2018, Park Ranger McGeorge spoke with A.L., who explained that her home was burglarized between December 17 and December 19 and that fingerprints had been recovered from a cereal bowl by the Sacramento Police Department. A.L. promised to email the police report that had been generated. McGeorge noted A.L.'s recovered items included: her passport, student ID, IRS tax forms, pay stub, education loan documents, Costco card, MasterCard, AAA card, and Kaiser Permanente card. A.L. confirmed the spare key fob for her Jeep had been stolen during the burglary.

Also on January 5, 2018, the People filed case No. 18FE000279 (the January 5 Case), which was a seven count complaint charging O'Conner with being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count one); possession of a short-barreled shotgun (§ 33215—count two); possession of a billy club or blackjack (§ 22210—count 3); receiving/concealing stolen property (§ 496 subd. (a)—count four);[2] identity theft with a prior (§ 530.5, subd. (c)(2)—count five); possession of burglary tools (§ 466—

---

[2] This count did not identify defendant's victim beyond stating that the property belonged to "Occupants of Rivercrest Apartments."

count six); and possession of a weapon in a county park (Sac. County Code, § 9.36.060—count seven).

Discovery associated with this case was provided to O'Conner's attorney on January 9, 2018. It included a report written by Ranger McGeorge, which noted, "Throughout the search, I found items that appeared could be related to burglaries or other similar crimes (see notes at the end of this report for more details)." This report later emphasized: "***NOTE*** **Rangers found multiple pieces of personal identifying information during the probation search. Rangers believe the items may be linked to recent burglaries. Follow-up will be conducted and supplemental reports and/or additional charges may follow the original report.**"

On January 10, 2018, O'Conner resolved the case by pleading no contest to possession of a firearm by a felon and possession of burglary tools in exchange for five years felony probation and 210 days in county jail. O'Conner was sentenced immediately, and the remaining counts were dismissed in the interest of justice.

The next day on January 11, 2018, Detective Valdez requested fingerprint analysis of latent print lifts one through three recovered from A.L.'s apartment and that same day a latent fingerprint from the red cereal bowl from A.L.'s apartment was matched to O'Conner. A comparison report memorializing this discovery was created January 16, 2018, and reflected that a supervisor confirmed the fingerprint match.

Thereafter, on January 25, 2018, the People filed a complaint in case No. 18FE001421 (the January 25 Case) charging O'Conner with a single count of burglary (§ 459) of A.L.'s apartment alleged to have occurred on December 17, 2017.

B.    *O'Conner's Motion to Dismiss the January 25 Case*

On July 23, 2019, O'Conner filed a motion to dismiss the January 25 Case as an improper successive prosecution of the January 5 Case pursuant to section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). Attached to this motion were police reports associated with A.L.'s report of burglary, including the fingerprint

4

analysis, as well as sheriff department reports regarding O'Conner's arrest at his illegal encampment.

The People opposed O'Conner's motion, arguing the receiving/concealment of stolen property count from the January 5 Case did not arise from the same conduct as the charged burglary because they occurred on different dates. The People alternatively argued an exception to the prohibition on successive prosecution applied because O'Conner pled quickly and there was a "justifiable lack of prosecutorial awareness of the more serious charge." The People did not offer any independent evidence in support of their opposition.

O'Conner's reply brief in support of his motion argued the burglary and stolen property charges were related as a matter of law and that O'Conner accepted the People's offer to settle the January 5 Case because it was an unusually low offer in light of his prior strike. Attached to O'Conner's reply were additional police reports that had been provided to O'Conner's attorney prior to the plea deal in the January 5 Case. The reply highlighted that the investigating rangers believed the property recovered was linked to recent burglaries and that follow-up with possible additional charges would be conducted. It argued authorities knew about the fingerprints from A.L.'s apartment and that supplemental investigation was occurring, but the People had provided no explanation for why they did not wait for a fingerprint comparison prior to entering into the plea bargain. Thus, similar to the petitioner in *Barriga v. Superior Court* (2012) 206 Cal.App.4th 739 (*Barriga*), O'Conner argued his complaint must be dismissed.

C.     *The Trial Court Denies O'Conner's Motion*

By the hearing on O'Conner's motion, the parties had narrowed the issues, exclusively arguing over whether the exception articulated in *People v. Davis* (2005) 36 Cal.4th 510 (*Davis*) applied or whether, consistent with *Barriga, supra*, 206 Cal.App.4th 739, authorities had not demonstrated the exercise of due diligence requiring dismissal. O'Conner argued the true question was why the People did not

5

discover the evidence, and like *Barriga*, the fingerprints could have been analyzed quickly and thus the People were not diligent. O'Conner further argued that authorities knew about his possible connection to the burglary on Friday, January 5, but waited six days, until Thursday, January 11, to request the fingerprint comparison, which only took a phone call. The People disagreed, arguing that *Barriga* was distinguishable, as the time between when police had reason to suspect O'Conner and the discovery of the evidence was much shorter than the month in *Barriga*, thus demonstrating due diligence.

The trial court first determined that the applicable standard was articulated in *Davis, supra*, 36 Cal.4th 510, quoting that case for the record: " 'We have recognized an exception to the multiple prosecution bar where the prosecutor is, quote, "unable to proceed on a more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discoverable—that have not been discovered despite the exercise of due diligence." Section 654 will not bar later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime, but this exception applies only when the government acted with due diligence at the outset but was unable to discover the additional facts necessary to sustain the greater charge. Whether the government exercised due diligence or not is a question of fact.' "

The court then determined that *Barriga* was distinguishable because authorities in that case had the cell phone in question the entire time and could have obtained a warrant from a judge at any time, but did not do so for at least a month. Here, however, authorities initially had a latent print, but nothing to compare it to. Weeks later, O'Conner was found to be in possession of stolen property. Authorities then matched O'Conner to the latent print within eight days, which the court remarked was "light speed in the government." The court stated, "How they even were able to get somebody to respond to look at a latent print within a week is—I don't know how they did it in this case, but it happened." The court determined a latent print match within eight days

6

demonstrated "reasonable diligence" and concluded, "because the government in this case could not have proceeded on that burglary [charge] without the latent match which was pursued and received within a very reasonable time" the *Davis* exception applied.

### D.     *The Proceedings in This Court*

On February 26, 2020, O'Conner filed a petition for writ of mandate, prohibition, and other appropriate relief seeking a stay of his impending trial in the January 25 Case and an order directing the trial court to dismiss that action. This court granted the stay request on March 5, 2020, and following informal briefing from the real party in interest, granted an alternative writ of mandate on May 18, 2020.

## II.  DISCUSSION

O'Conner contends his prosecution in the January 25 case violates section 654's prohibition on multiple prosecutions because the evidence that would be used to show he committed a burglary of A.L.'s home would substantially overlap with the evidence needed to establish that he received/concealed A.L.'s stolen property. O'Conner continues that the *Davis* exception to this prohibition does not apply here because the record contains no explanation why the district attorney entered into a plea bargain on the January 5 case without waiting for the ranger's supplemental investigation. The real party in interest disagrees, arguing this case does not fall within the two tests that have developed to determine whether a subsequent prosecution violates *Kellet*, and that in any event, matching O'Conner's fingerprints within eight days of his apprehension shows the exercise of due diligence under *Davis*. For the reasons explained herein, we concur with O'Conner.

### A.     *The Law Against Multiple Prosecutions*

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and

7

sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).)

Section 654's prohibitions on multiple punishment and multiple prosecutions are separate, with " 'different purposes and different rules of prohibition.' " (*People v. Ochoa* (2016) 248 Cal.App.4th 15, 27.) "The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment imposed; double prosecution may be precluded even when double punishment is permissible." (*Neal v. State of California* (1960) 55 Cal.2d 11, 21 (*Neal*), disapproved on other grounds as stated in *People v. Correa* (2012) 54 Cal.4th 331.)

In the California Supreme Court's seminal decision on multiple prosecution, the court explained: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra*, 63 Cal.2d at p. 827.)

"Appellate courts have adopted two different tests under *Kellett* to determine whether multiple offenses occurred during the same course of conduct. [Citation.] Under one line of cases, multiple prosecutions are not barred if the offenses were committed at separate times and locations." (*Ochoa, supra*, 248 Cal.App.4th at pp. 28-29.) This test is commonly referred to as the " 'time and place test.' " (*Id.* at p. 29.)

8

"A second version of the test—the 'evidentiary test'—looks to the evidence necessary to prove the offenses." (*Ochoa, supra*, 248 Cal.App.4th at p. 29.) " '[I]f the evidence needed to prove one offense necessarily supplies proof of the other, . . . the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds.' " (*Ibid*.) However, the overlap of evidence must be more than trivial. " 'Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*.' " (*Ibid*.)

Further, as explained by the Supreme Court in *Davis*, there is an exception to the multiple prosecution bar "where the prosecutor ' " 'is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.' " ' [Citations.] Thus, for example, section 654 does not preclude prosecuting a defendant for the murder of a victim who dies only after an earlier prosecution for attempted murder. [Citation.] Similarly, section 654 will not bar a later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime. [Citation.] But this exception applies only when the government 'acted with due diligence at the outset but was unable to discover the additional facts necessary to sustain the greater charge.' " (*Davis, supra*, 36 Cal.4th at p. 558.)

Due diligence does not require "extraordinary" measures. (See *People v. Spicer* (2015) 235 Cal.App.4th 1359, 1375-1376 [analyzing authority cited by *Davis* which recognized "extraordinary" efforts were not required in order to establish due diligence]; accord *People v. Witcraft* (2011) 201 Cal.App.4th 659, 672.) It has been recognized in an analogous context that " '[d]ue diligence is " '[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.' " ' " (*Barriga, supra*,

9

206 Cal.App.4th at p. 748.)  We review the legal question of whether section 654 applies de novo.  (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)  Whether the government exercised due diligence is a question of fact (*Davis, supra*, 36 Cal.4th at p. 558), for which the People bear the burden of proof.  (*Barriga, supra*, at pp. 747-748.)  We review factual questions for substantial evidence.  (*Id*. at p. 748, citing *Davis, supra*, at p. 558.)

B.      Application

As we shall explain, there is substantial overlap in the evidence the People would present to show that O'Conner burglarized A.L.'s home and concealed stolen property taken in that burglary.  Accordingly, we will find the evidentiary test is met.  Having reached that conclusion, we find it unnecessary to conduct the time and place test.  Finally, we review the trial court's *Davis* conclusion and find that it was not supported by substantial evidence.

1.      *The Evidentiary Test*

Section 459 advises "[e]very person who enters any . . . apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  Thus, to establish O'Conner committed burglary, the People would have to show that he entered A.L.'s apartment with the intent to commit a felony therein (§ 459), here, the theft of A.L.'s property.  This would require the presentation of evidence of O'Conner's entry into A.L.'s home, to wit, his fingerprint on the cereal bowl in that home.  It would also require evidence of his intent to steal, here, that he was found to be in possession of multiple items taken from A.L.'s home.  This would be established by presenting A.L.'s testimony concerning what had been taken in the burglary and law enforcement testimony concerning A.L.'s property that had been recovered from defendant.

Further, California law defines concealing stolen property as:  "Every person . . . who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained."  (§ 496, subd. (a).)  Thus, in order to establish that O'Conner concealed stolen property, the prosecution

10

would have to provide evidence not only that he had A.L.'s items taken during the burglary, which would require the aforementioned presentation of evidence from both A.L. and law enforcement, but also that O'Conner *knew* the items were stolen. (*Ibid.*) To establish this knowledge, the People would present evidence that it was O'Conner who took the items during the burglary of A.L.'s apartment, again requiring testimony placing O'Conner at the scene of the burglary via the fingerprint analysis.

Thus, we find substantial overlap in the evidence necessary to establish burglary and concealment of stolen property crimes. This is so because the evidence necessary to show the entry of A.L.'s home to commit theft supplies the felony for the burglary and the burglary in turn supplies the evidence that defendant knew the property he was concealing was stolen. These requirements would be established by offering the same witnesses and physical evidence. Under these circumstances, we find the evidentiary test is met.[3] (See *Ochoa, supra*, 248 Cal.App.4th at pp. 19, 29, 36-38 [evidence to support conviction for conspiracy to distribute methamphetamine overlapped substantially with evidence to support conviction for gang participation because Ochoa acted as middleman obtaining methamphetamine from suppliers and selling it to the street gang]; cf. *People v. Britt* (2004) 32 Cal.4th 944, 954 [Britt could not be separately prosecuted for two violations of sex offender reporting requirements; although the two offenses were distinct, the court found that "a single unreported move within California . . . played a significant part in both omissions"].)

---

[3] This overlap in evidence distinguishes this matter from *People v. Martin* (1980) 111 Cal.App.3d 973, 978, which allowed separate prosecutions for burglary and for possession of a shotgun taken in the burglary. Unlike *Martin*, where it was the character of the shotgun itself that made its possession illegal (*ibid.*), here, the stolen character of the property is squarely at issue requiring significant overlap in the presentation of evidence.

The real party in interest argues there is no substantial overlap in evidence because O'Conner was discovered with stolen property from numerous individuals, not just A.L. However, the Real Party in Interest has not shown, nor have we have uncovered, any authority that would excuse the substantial overlap between the concealment of A.L.'s stolen property and the subsequent burglary prosecution merely because O'Conner had also been found to be in the possession of personal property belonging to other individuals.

2.    *The Davis Exception*

We further find that substantial evidence does not support the trial court's conclusion that authorities acted with due diligence, but still failed to discover the fingerprint match necessary for the burglary charge prior to settling the January 5 case on January 10.  (See *Davis, supra*, 36 Cal.4th at p. 558 [reviewing for substantial evidence a determination that "the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime"].)  This is because the People offered *no evidence* regarding why they were unable to match O'Conner's fingerprints prior to making a plea deal with him.  On the contrary, the record discloses that investigating officers were aware as of January 5 that fingerprints had been recovered in the burglary, that discovery provided to defense counsel on January 9 warned officials that the stolen property was likely connected to recent burglaries which were being investigated, and that the same day authorities requested the fingerprint analysis (January 11), a fingerprint from A.L.'s home was matched to defendant.  This lack of evidence detailing why authorities failed to discover the fingerprint match prior to the plea deal puts this case squarely within *Barriga*'s purview.

In *Barriga*, we recognized it was the People's burden to provide evidence explaining why with reasonable efforts authorities could not have obtained the missing evidence prior to case resolution, and that in the absence of such a showing, there was no substantial evidence supporting the trial court's due diligence determination.  (*Barriga,*

12

*supra*, 206 Cal.App.4th at p. 748; see also *People v. Witcraft, supra*, 201 Cal.App.4th at pp. 674-676 [no due diligence where district attorney had reason to suspect and investigate the latter offense, which could have been easily confirmed prior to the plea deal].)  The same analysis applies here.

Moreover, there is no substantial evidence supporting the trial court's determination that a fingerprint match within eight days was "light speed in the government."  There is no evidence in the record concerning any backlog in the processing of fingerprint analysis or the typical timing required for such analysis.  The only evidence in the record on this subject shows that the same day authorities requested the fingerprint analysis, a match was made.  This suggests there was no backlog, further supporting that without an explanation as to the reasonable efforts taken by authorities, there is no substantial evidence supporting the trial court's due diligence finding.

We conclude the trial court erred in denying O'Conner's motion to dismiss the January 25 Case.  Accordingly, we will direct the issuance of a writ of prohibition.

### III.  DISPOSITION

The petition is granted.  Let a peremptory writ of prohibition issue directing the respondent court to refrain from any further proceedings against petitioner Graham O'Conner in Sacramento Superior Court case No. 18FE001421.  Having served its purpose, the alternative writ is discharged and the stay is lifted.

/S/

RENNER, J.

We concur:

/S/

BLEASE, Acting P. J.

/S/

HULL, J.